IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| RIVER ASSETS, LLC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIV. ACT. NO. 1:23-cv-106-TFM-C |
| ) | |
| KNIGHT TOWING, LLC, *et al.*, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION

The Court issues the following Memorandum Opinion pursuant to the Order entered on September 30, 2025. Doc. 134. Before the Court is Defendant U.S. Specialty Insurance Company's ("USSIC") Motion for Partial Summary Judgment and Supporting Brief (Doc. 118 filed 2/17/25). As previously ordered, the motion for partial summary judgment (Doc. 118) is **GRANTED in part** and **DENIED in part**. The motion is granted as to Plaintiff's claim of Bad Faith Failure to Insure against USSIC and denied as to Plaintiff's claim for economic damages against USSIC.

### I.     FACTUAL BACKGROUND

Plaintiff River Assets, LLC, a company organized under the laws of Illinois, is in the business of operating barges that transport bulk materials. Doc. 1 at 2. In January 2022, Plaintiff purchased a 33-year-old "spud barge," model DM-110. Doc. 1 at 2; Doc. 115-1 at 37-38. "River Assets and the DM 110 were insured under a Hull policy through U.S. Specialty Insurance Company through Continental Underwriters Ltd., LLC, with the barge and its equipment having a total scheduled value on that policy of $1,730,000." Doc. 1 at 3. On November 9, 2022, a tugboat operated by Defendant Knight Towing, LLC, began a voyage towing four barges, including the

subject DM-110 owned by River Assets, across Mobile Bay en route to Orange Beach. *Id.* at 3. During the tow, the DM-100 began "topping to port," and the crew of the tow "repositioned the DM 110 alongside the front hopper barge in the tow with the DM 110's transom stern facing forward and continued on the voyage. *Id.* at 4. However, as the tow progressed, the DM-110 began to take on water and eventually on November 14, 2022, the DM-110 sank in shallow water, where it remained until salvage operations refloated the barge on November 23, 2022. *Id.* at 5. River Assets alleges that "[t]he total replacement and/or repair costs of the damaged or destroyed equipment aboard the DM 110 at the time of its sinking is estimated to be $1,205,751.53, plus the $4,169 cost to inspect the damage to the material handler." *Id.* at 6. In addition to the costs of salvage, damage to equipment, and loss of the DM-110, River Assets also claims that it "also suffered loss of business, loss of use and other economic losses as result of the sinking of the DM 110." *Id.* at 8. River Assets avers that the sinking was caused by the crew of the tugboat in that they "failed to exercise reasonable care in securing the tow and towing the DM 110 across Mobile Bay in adverse weather conditions." *Id.* at 7. Both parties hired surveyors who inspected the DM-110 in the few months following the salvage operation to determine the extent of the damage and the cause of the incident. USSIC was in regular communication with representatives for River Assets regarding the progress of the inspections and claims, and the parties were actively engaged in determining what protocols were necessary for the inspections. *See* Doc. 128-1 at 2-16.

On March 29, 2023, River Assets filed this lawsuit against Defendants Knight Towing, LLC, USSIC, and CULL, LLC[1]. Doc. 1. River Assets specifically claimed that USSIC's "refusal to pay and delays in resolving this claim directly with River Assets under its Hull policy was

---

[1] Defendant CULL, LLC, was dismissed as a party to this action by order entered on January 29, 2024. Doc. 73.

unreasonable, negligent and/or in bad faith." Doc. 1 at 8.  On February 17, 2025, Defendant USSIC filed the present Motion for Partial Summary Judgment and supporting brief, seeking to proceed under Illinois state law as to the bad faith claim, arguing that summary judgment is due as to River Assets' claim of bad faith, and arguing that River Assets has failed to sufficiently support its claim for economic damages.  Doc. 117.  River Assets responded to the motion (Doc. 126), and USSIC replied (Doc. 130).  The matter is fully briefed and ripe for review and the Court finds that no hearing is necessary for the motion's resolution.

## II.    STANDARD OF REVIEW

A party in a lawsuit may move a court to enter summary judgment before trial.  Fed. R. Civ. P. 56(a), (b).  Summary judgment is appropriate when the moving party establishes there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *see also Greenberg v. BellSouth Telecomms., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) ("Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine [dispute] as to any material fact and that the moving party is entitled to judgment as a matter of law.'").  "[T]he substantive law will identify which facts are material."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also Ritchey v. S. Nuclear Operating Co.,* 423 F. App'x 955 (11th Cir. 2011) (quoting *Anderson*, 477 U.S. at 248).[2]  At the summary judgment juncture, the court does not "weigh the evidence and determine the truth of the matter," but solely "determine[s] whether there is a genuine issue for trial."  *Anderson*, 477 U.S. at 249.  Only disputes about the material facts will preclude the granting of summary judgment.  *Id*.

The movant bears the initial burden of proof.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  A party must support its assertion that there is no genuine issue of material fact by "citing

to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).  The admissibility of evidence is subject to the same standards and rules that govern admissibility of evidence at trial.  *Clemons v. Dougherty County*, 684 F.2d 1365, 1369 n.5 (11th Cir. 1982) (citing *Pan-Islamic Trade Corp. v. Exxon Corp.*, 632 F.2d 539, 556 (5th Cir. 1980)).

Once the movant meets its burden under Fed. R. Civ. P. 56, the non-movant must go beyond the pleadings and designate specific facts showing there is a genuine issue for trial.  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).  "A genuine issue of material fact exists when 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"  *Moore ex rel. Moore v. Reese*, 637 F.3d 1220, 1232 (11th Cir. 2011) (quoting *Anderson*, 477 U.S. at 248).  The court must view the facts and draw all reasonable inferences in favor of the non-moving party.  *Id*. (citing *Rosario v. Am. Corrective Counseling Servs., Inc.*, 506 F.3d 1039, 1043 (11th Cir. 2007)); *Greenberg*, 498 F.3d at 1265 ("We view the evidence and all factual inferences therefrom in the light most favorable to the party opposing the motion.").  However, to avoid summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586 (citations omitted).  Conclusory assertions, unsupported by specific facts, that are presented in affidavits opposing the motion for summary judgment are likewise insufficient to defeat a proper motion for summary judgment.  *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990). "Speculation does not create a *genuine* issue of fact." *Cordoba v. Dillard's, Inc.*, 419 F.3d

1169, 1181 (11th Cir. 2005) (citation omitted). If the evidence is merely colorable or is not significantly probative, summary judgment may be granted. *See Anderson*, 477 U.S. at 249-50 (emphasis in original) (citations omitted). In short, summary judgment is proper after adequate time for discovery and upon motion against a party who fails to make a showing that is sufficient to establish the existence of an element that is essential to that party's case. *Celotex*, 477 U.S. at 322.

Finally, Fed. R. Civ. P. 56(e) also provides that "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may: (1) give an opportunity to properly support or address the fact; (2) consider the fact undisputed for purposes of the motion; (3) grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it; or (4) issue any other appropriate order." Fed. R. Civ. P. 56(e).

### III.  DISCUSSION AND ANALYSIS

**A.  Bad Faith**

USSIC first argues that it "River Assets has not shown and cannot show a "dishonest purpose or motive of self-interest or ill will" sufficient to survive summary judgment in favor of USSIC on bad faith." Doc. 118 at 24. Specifically, USSIC argues that "[w]here a debatable reason for paying a claim exists, an insurer is entitled to debate the claim." *Id.* (quoting *State Farm Fire and Cas. Co. v. Brechbill*, 144 So. 3d 248, 257- 258 (Ala. 2013)). River Assets argues in response that USSIC "did not deny or approve the claim, they simply dragged the claim out seeking to do ever more discovery and inspections on the claim until such time as they could come up with a defense." Doc. 126 at 25. River Assets further questions whether Alabama or Illinois state law should be applied to the bad faith claim in this case. *Id.* at 22.

As an initial matter, the subject hull insurance policy does not contain a choice of laws clause or otherwise mention Illinois, Alabama, or "bad faith." Doc. 115-12. Further, the Complaint makes no claim that Alabama or Illinois state law controls the substantive analysis of the bad faith count. Doc. 1 at 8 ("United Specialty and Continental's refusal to pay and delays in resolving this claim directly with River Assets under its Hull policy was unreasonable, negligent and/or in bad faith."). The Complaint asserts that "[v]enue in this Court is proper under 28 U.S.C. § 1391(a)(2), as a substantial part of the events giving rise to claims asserted herein occurred within the jurisdiction of this Court." *Id.* at 2. Similarly, Plaintiff makes no claim of choice of law in its statement of jurisdiction. *Id.* at 1 ("The Court has jurisdiction over this matter under 28 U.S.C. § 1333 because the claims asserted herein involve the interpretation and application of a policy of marine insurance and the sinking of a barge, the DB 110, on navigable waters of the United States of America."). Moreover, in its Opposition to Motion to Transfer (Doc. 26), Plaintiff's claims regarding venue are particularly instructive:

> In this case, the spud barge DM-110, owned by River Assets, sank in Mobile Bay while being towed across the bay by the MV Capt. Lonnie Ryan. The subject matter of the suit, negligent towing, and the facts surrounding the alleged breach of a contract of towage (which will arguably also involve the claim for breach of a contract of insurance), are intimately connected to Plaintiff's chosen venue. For at least the last 4-years prior to the sinking, the DM-110 was in Mobile Bay. The entirety of the voyage at issue took place in Mobile Bay, as did the subsequent salvage, and several inspections of the DM-110 by the Defendants. While River Assets and Knight Towing might both have their principal places of business in Illinois, their business takes place up and down the Mississippi River and across the Gulf Coast. Finally, while some witnesses may be closer to East St. Louis, Illinois, the majority are closer to Mobile.

Doc. 26 at 1. More directly, USSIC has argued previously that moving this matter to the Southern District of Illinois would effect a "venue with only a marginal connection to the subject matter of the case..." *Id.* at 7.

The Supreme Court has stated that "Maritime commerce traverses interstate and

international boundaries, so when a maritime accident or dispute occurs, time-consuming and difficult questions can arise about which law governs." *Great Lakes Ins. SE v. Raiders Retreat Realty Co., LLC*, 601 U.S. 65, 72 (2024). In this case, no such forum or choice-of-law provision is contemplated in the policy at issue.

"There are no applicable provisions of federal maritime law which govern bad faith claims related to a maritime insurance contract." *Polar Vortex, LLC v. Certain Underwriters at Lloyd's, London Subscribing to Pol'y YHL1700840*, Civ. Act. No. 22-CV-61067-RAR, 2023 U.S. Dist. LEXIS 25040, at *18 n. 8, 2023 WL 2016832, at *7 n. 8 (S.D. Fla. Feb. 14, 2023) (citing *Brown v. Yaring's of Tex., Inc.*, 643 F. Supp. 3d 1304, 1333 (S.D. Ala. Dec. 1, 2022) (applying Alabama state law to adjudicate a "bad faith refusal to pay an insurance claim")). USSIC argues that both Alabama and Illinois follow the *lex loci contractus* rule in determining which state's law applies in a contract dispute, i.e., that the law of the state where the contract was entered governs contractual disputes. Doc. 126 at 23 (citing *Cherokee Ins. Co., Inc. v. Sanches*, 975 So.2d 287 (Ala. 2007) (citing *Hofeld v. National Life Ins. Co.*, 59 Ill.2d 522, 528 (Ill. 1975)). However, the Supreme Court of Illinois has held that to the extent "bad faith" claims are available under Illinois state law, they sound in tort, not contract.

> [A]n insurer's conduct may give rise to both a breach of contract action and a separate and independent tort action. *Kelsay*, 74 Ill.2d at 187, 23 Ill. Dec. 559, 384 N.E.2d 353. Mere allegations of bad faith or unreasonable and vexatious conduct, without more, however, do not constitute such a tort. Courts therefore should look beyond the legal theory asserted to the conduct forming the basis for the claim. In cases where a plaintiff actually alleges and proves the elements of a separate tort, a plaintiff may bring an independent tort action, such as common law fraud, for insurer misconduct.

*Cramer v. Ins. Exch. Agency*, 174 Ill. 2d 513, 527, 675 N.E.2d 897, 904 (1996) (cleaned up). Accordingly, to the extent that a bad faith claim has been pleaded, rather than the "vexatious and unreasonable" claim contemplated by 215 ILCS 5/155. Therefore, this Court will apply Alabama

state law to determination of Plaintiff's bad faith claim. Moreover, as will be explained below, the result in this case would be the same regardless of whether Alabama or Illinois state law were applied.

USSIC moves for partial summary judgment in its favor on River Asset's bad faith claim. This motion is due to be granted as to this claim. The elements of a bad faith refusal to pay claim under Alabama law are as follows:

(a) an insurance contract between the parties and a breach thereof by the defendant;

(b) an intentional refusal to pay the insured's claim;

(c) the absence of any reasonably legitimate or arguable reason for that refusal (the absence of a debatable reason);

(d) the insurer's actual knowledge of the absence of any legitimate or arguable reason;

(e) if the intentional failure to determine the existence of a lawful basis is relied upon, the plaintiff must prove the insurer's intentional failure to determine whether there is a legitimate or arguable reason to refuse to pay the claim.

*McLaughlin v. Alabama Farm Bureau Mut. Casualty Ins. Co.,* 437 So.2d 86, 90 (Ala.1983). The dispositive element in this instance is that a bad faith claim under Alabama law "ultimately depends upon whether there is a debatable reason for denying the claim." *Jones v. Alabama Farm Bureau Mut. Casualty Co.,* 507 So.2d 396, 402 (Ala.1986) (Torbert, C.J., concurring specially). This case involves a dispute over the amount of payment due on USSIC's policy. The evidence before the Court demonstrates that the parties were actively engaged in inspection of the DM-110 and investigation of the circumstances of the loss and the condition of the vessel in the weeks leading up to the filing of this suit. Specifically, the record contains extensive email communications between representatives of the parties to arrange inspection of the DM-110. *See*

Docs. 128-1.  On January 13, 2023, USSIC's representative emailed the representative for River Assets with initial inquiries regarding the barge and the loss event and specifically stated, "Please be advised that underwriters reserve all rights under the terms and conditions of the Cover Note as this claim is investigated for coverage and handling."  *Id.* at 2.  The parties continued to communicate regarding the status of the barge and to negotiate the protocols necessary for the inspection of the barge as late as March 15, 2023.  *Id.* at 3-16.  River Assets filed this preset action two weeks later on March 29, 2023.  There is no evidence in the record that USSIC refused to pay the claim.  There is extensive evidence that USSIC was actively engaged in the process of investigating the claim with reasonable and legitimate concerns regarding the seaworthiness of the DM-110 at the time of the sinking.

USSIC's actions taken pursuant to the policy, i.e., investigating the claim, inspecting the DM-110, and providing updates to the insured, appear reasonable and justifiable.  Even construing the facts in the light most favorable to River Assets as the non-moving party, River Assets simply cannot meet the requirements of a bad faith claim on the facts of this case.  Even if this matter were governed by Illinois state law as USSIC has suggested, the result would be the same, because the position taken by USSIC was a reasonable legal position:

> An insurer's actions are not vexatious and unreasonable if "(1) there is a bona fide dispute concerning the scope and application of insurance coverage; (2) the insurer asserts a legitimate policy defense; (3) the claim presents a genuine legal or factual issue regarding coverage; or (4) the insurer takes a reasonable legal position on an unsettled issue of law."

*Citizens First Nat'l Bank of Princeton v. Cincinnati Ins. Co.,* 200 F.3d 1102, 1110 (7th Cir.2000) (internal citations omitted).

**B.   Economic Damages**

USSIC next argues for partial summary judgment on River Assets' claim for economic

damages because it "has no credible evidence to support these claimed damages and, to the extent they have 'evidence' allegedly supporting their claims for damages, it remains too speculative to justify an award." Doc. 118 at 25. River Assets has argued in response that "River Assets admittedly does not have audited statements, there is more than sufficient evidence in the record to support the claims being decided at trial, not on a summary proceeding." Doc. 126 at 28.

The Eleventh Circuit has recognized the circumstances under which an insured may seek "demurrage" in maritime cases.

> More recently, we have recognized the continuing validity of the general rule set forth in *The Conqueror. See Ove Skou v. United States,* 478 F.2d 343, 345 (5th Cir.1973) (citing with approval *The Conqueror*); *Bolivar County Gravel Co. v. Thomas Marine Co.,* 585 F.2d 1306, 1308 n. 2 (5th Cir.1978) (same); *The Wolsum,* 14 F.2d 371, 377 (5th Cir.1926) (same). In *Ove Skou,* we specifically held that "[d]emurrage 'will only be allowed when profits have actually been, or may be reasonably supposed to have been, lost, and the amount of such profits is proved with reasonable certainty.' " *Ove Skou,* 478 F.2d at 345 (quoting *The Conqueror,* 166 U.S. at 125, 17 S. Ct. at 516).

*Cent. State Transit & Leasing Corp. v. Jones Boat Yard, Inc.*, 206 F.3d 1373, 1376 (11th Cir. 2000) (footnote omitted). "The damages must not be merely speculative, and something else must be shown than the simple fact that the vessel was laid up for repairs." *The Conqueror*, 166 U.S. 110, 127 (1897). "The burden of proof on the shipowner is not excessive. He need prove only that profits 'have actually been or may be reasonably supposed to have been lost.'" *Skou*, 478 F.2d at 347 (quoting *The Conqueror*, 166 U.S. at 125).

In this case, there is sufficient evidence that "at the time of the sinking, the DM110 was on its way to Orange Beach where it was to be paid $2.50/ton for offloading at least the 4 large material barges in their tow . . . The cost of the labor to operate the barge then was known." Doc. 126 at 28 (internal citation omitted). This is unlikely to be the full extent of economic damages claimed by River Assets. However, it is neither speculative nor unreasonable. Whether further

damages are eventually proven is immaterial at this juncture. Viewing the evidence in the light most favorable to River Assets, there is sufficient evidence to defeat a motion for summary judgment on the basis of USSIC's claim that the evidence of loss is too speculative or unreasonable to submit this issue to the trier of fact.

## IV.  CONCLUSION

For the reasons stated above and as issued in the Summary Order (Doc. 134) entered on September 30, 2025, it is **ORDERED** that USSIC's motion for partial summary judgment (Doc. 118) is **GRANTED in part** and **DENIED in part**. The motion is granted as to Plaintiff's claim of Bad Faith Failure to Insure against USSIC. The motion is denied as to Plaintiff's claim for economic damages against USSIC.

**DONE** and **ORDERED** this 10th day of October 2025.

/s/ Terry F. Moorer
TERRY F. MOORER
UNITED STATES DISTRICT JUDGE